**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**DANIEL RAY ERICKSON,**

    **Plaintiff,**

v.                                                                           **Case No. 8:03-cv–859-T-TBM**

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
                                     /

**O R D E R**

The Plaintiff seeks judicial review of the decision denying his request for waiver of an overpayment charge in connection with his Social Security disability benefits. For the reasons set out herein, the decision is affirmed.

I.

A summary review of the procedural history in this case is useful. In December 1973, Plaintiff filed an application for Social Security disability benefits under the name of John W. Dickey,[1] asserting disability due to back problems and a mental impairment. (R. 32). Plaintiff was awarded benefits on the basis of a psychiatric impairment. In 1996, he was charged for an overpayment of benefits because he continued to receive payments while

---

[1] Plaintiff legally changed his name from John W. Dickey to Daniel Ray Erickson on June 12, 1998. *See* (R. 130).

incarcerated in 1995. In May 1996, Plaintiff requested a waiver of collection of the overpayment because he was not at fault for the overpayment and was financially unable to refund the money. (R. 37-45). The Social Security Administration ("SSA") responded by letter in October 1997. According to the SSA, there was an updated net overpayment balance calculated on *two* overpayments. Plaintiff was requested to submit an updated waiver form if he wished to contest collection of the overpayment. (R. 46). It appears that a notice of change of benefits was issued February 14, 1998. (R. 61-64). In April 1998, the SSA issued a notice superseding its prior notices to reflect a net overpayment balance of $2,156.70.[2] (R. 60). In September 1998, Plaintiff requested reconsideration. His reconsideration raised six issues. (R. 78-81).[3] By letter dated September 25, 1998, the SSA denied reconsideration on each issue except issue number five, which pertained to the current overpayment balance. (R. 83-85).[4] By notice dated October 16, 1998, the SSA denied the request for waiver of the

---

[2] By this calculation of the overpayment, Plaintiff had received overpayments totaling $5,735.20, plus supplemental insurance premiums totaling $1,161.50 in connection with the overpayments, for a total overpayment of $6,896.70. Based on Plaintiff's return of $4,508.00 and additional benefits reductions totaling $232.00, the net overpayment balance was said to be $2,156.70. (R. 60).

[3] The first four issues and issue six related to action by the SSA in connection with benefits calculation beginning in 1973 and overpayment issues in the 1980s. Issue five related to the "current mess." Plaintiff complained of the various figures given him for the overpayment and suggested the amounts calculated were incorrect. In the last issue, he complained of being charged Medicare premiums past the date of his suspension. By his view of the whole matter, he was owed $4,933.60. *Id.*

[4] In response to issue one, the SSA explained its original calculation of benefits dating back to 1973 and denied Plaintiff's claims of error. As for issue two, the SSA cited its 12/21/87 letter of explanation for the suspension of benefits due to his earlier incarceration between October 1980 and January 1985. It noted the matter had been challenged and affirmed by the district court for the Central District of California in 1987, "therefore, the question of whether or not you were overpaid $3,377.60 is now closed, . . . ." On issues three

2

$2,156.70 overpayment balance on a finding that Plaintiff was not without fault in causing the overpayment. (R. 169-72). On October 27, 1998, Plaintiff requested an administrative hearing on the overpayment issue. (R. 87).

An administrative hearing before an Administrative Law Judge ("ALJ") was conducted March 20, 2000. The ALJ recognized Plaintiff under his new name and identified the sole issue as related to the waiver of second overpayment from April through September 1995. (R. 11-31). By decision of April 24, 2000, the ALJ determined that while the Plaintiff was overpaid $2,156.70 in disability benefits, he was entitled to a waiver of the recovery of that amount of overpayment on findings that he was without fault in causing the overpayment and recovery of the overpayment would defeat the purposes of Tile II of the Act. (R. 282-84).

On June 12, 2000, Plaintiff requested review of only those issues that were not addressed by ALJ. (R. 285). Before the Appeals Council ruled, Plaintiff also sought reconsideration and a hearing on the ALJ's decision. The request for hearing was denied (R. 8), and an appeal to this court was taken. On January 23, 2004, the Appeals Council vacated the April 2000 decision and remanded the case for review. It stated Plaintiff's claim to be that he was owed $3,127.00, the amount he had refunded on this second overpayment, plus $774.90 for the amounts the SSA had determined to be deductible from the overpayment balance, minus the overpayment amount of $2,156.70. The Appeals Council remanded for

---

and four, the SSA explained the deduction of $156.40 for the Medicare premium for the months of July 1981 through August 1982, and upon his failure to timely seek a waiver of the same, the deduction of this amount on November 3, 1986. As for issue six, the SSA explained why Plaintiff's Medicare benefits were not suspended even though benefits had been due to his incarceration in the 1980s and the effect on his monthly benefit when such was reinstated. As to each of these issues, Plaintiff was advised that such was the final ruling.

determination as to whether recovery of the full amount of overpayment should be waived and Plaintiff repaid the amounts refunded. The Appeals Council directed that the ALJ ascertain the source of the funds refunded by Plaintiff in October 1995 and December 1996 and issue a new decision on whether Plaintiff was without fault in receiving the overpayment of $4,554.60 caused by his incarceration in 1995-1996 and the $2,208.00 overpayment caused by duplicate payments, and, if so, whether an adjustment of recovery of all or part of those amounts would defeat the purpose of Tile II or be against equity and good conscience and may be waived. The Appeals Council further noted that, "it is the position of [SSA] that whether or not the overpaid individual has income or resources sufficient for more than ordinary and necessary needs, recovery of an overpayment will not defeat the purpose of Title II to the extent that the overpaid person has any part of the overpayment in his possession at the time he was notified of the overpayment (POMS GN 02250.105)." (R. 288-290).[5]

The hearing on remand was conducted February 1, 2007, before a different ALJ. At the time, Plaintiff was incarcerated at the Hardee Correctional Institute in Bowling Green, Florida. He was 68 years old. At the outset of the hearing, the ALJ indicated the hearing concerned the overpayment issue. Plaintiff argued that the district court order remanding the earlier appeal dictated that the ALJ should also review the five other issues raised because

---

[5]Subsequently, the Appeals Council also directed that proceedings on the sentence six remand from this district court on Plaintiff's appeal from the ALJ's decision be consolidated. *See* (R. 295-96). In its remand order, the court, which had not considered the record at that time, suggested that upon remand the Appeals Council and/or ALJ should also clarify the Commissioner's position on the 'other issues' raised by Plaintiff apart from the overpayment matter. (R. 291-92).

4

they set forth due process issues.[6] As for the overpayment inquiry directed by the Appeals Council, the Plaintiff testified that he deposited the benefit checks and used some of the money. When it came time to make the repayment, what he did not have in his account, he borrowed from his mother to come up with the difference. He used later disability checks after he got out of prison to repay his mother. He believed the former ALJ told him at the hearing that all of the overpayment was being waived. Plaintiff further testified that his mother died in April 2006, leaving him stocks, bonds and cash worth $50,000. She apparently also left him half interest in a house along with his brother who he accused of stealing from him. Although he was financially okay at that time, he had not been at the earlier time. Presently, he had no debts. (R. 323-42)

Plaintiff then addressed the "other five issues." Although difficult to follow, he expressly complained about an apparent overpayment dispute in 1981 that went unresolved until 1984 when the Administration recouped that amount without giving him a hearing and being charged for Medicare while he was in prison. He made reference to the issues in his written submissions as well. (R. 342-62).

By decision of February 9, 2007, the ALJ found that Plaintiff was not entitled to benefits from April 1995 through September 1995, and was double paid in October 1996 and November 1996. After refunds and recalculations, there was an overpayment balance of $2,156.70. On the waiver issue, the ALJ found Plaintiff was without fault in causing either of the two overpayments at issue. On the issue of whether recovery of the overpayment would

---

[6]Additionally, Plaintiff had submitted a motion for summary judgment raising these issues. (R. 308-12).

5

defeat the purpose of Title II or be against equity and good conscience, the ALJ first found that the Plaintiff was credible and that he had not used the very overpayment funds he received to make the repayments, but given that his mother had died in April 2006, and left him with $50,000 in stocks and bonds and a house with $100,000 in equity to be sold and equally divided with his brother, requiring him to repay the overpaid amount was appropriate. On this finding, the ALJ concluded that the overpayment was not waived. No other issues were addressed in the decision. (R. 277-78).

On December 20, 2007, the Appeals Council adopted the findings of the ALJ and clarified that denial of the waiver applied to both the overpayment balance and to the amounts previously repaid by the Plaintiff. (R. 266-268). In reference to the court's directive that it clarify the other issues raised by the Plaintiff, the Appeals Council referred to its September 1998 letter to Plaintiff in response to his request for reconsideration (R. 79). *See* (R. 83-85). Finally, it affirmed that the only issue properly before the ALJ for consideration was that of the overpayment.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

The Plaintiff purports to raise the same or similar claims he has raised before and since his request for reconsideration in September 1998. Thus, he continues to protest the original calculation of benefits in 1973, an alleged duplicate deduction for an overpayment due to his incarceration in 1980 and 1981, suspension of benefits in 1984-1985, and an

7

alleged improper charge of $156.40 in October 1986 for medicare premiums. As to each of these claims, he purports to assert due process violations. Finally, he again raises the overpayment/waiver issues arising from the overpayment made during his incarceration in 1995 and the subsequent duplicate payment. (Doc. 38).

In response, the Commissioner urges that the court is without jurisdiction on all claims except for the issue related to the waiver of the 1995-1996 overpayment. By this argument, judicial review of claims arising under the Social Security Act ("the Act") are permitted only in accordance with the provisions of 42 U.S.C. §§ 405(g) and 405(h). By these provisions, judicial review is limited to final decisions of the Commissioner made after a hearing. Here, the final decision concerned whether Plaintiff was entitled to a waiver of an overpayment charge in connection with his 1995 incarceration and 1996 overpayments. As for the other issues, the Commissioner urges that Plaintiff has no rights to an appeal. (Doc. 42).

Upon my review, Plaintiff no longer has any rights of review on any of the issues apart from the overpayment/waiver proceedings last reviewed by ALJ Slahta. All other issues are time-barred, precluded on principles of *res judicata*, and/or barred under 42 U.S.C. § 405(g).

As the regulations prescribe, where a claimant seeks review of an initial determination, he must seek reconsideration within 60 days. 20 C.F.R. § 404.909(a).[7]

---

[7]The administrative review process is set forth in the regulations. 20 C.F.R. § 404.900. The five step process calls for an initial determination, a decision on reconsideration, a hearing before an ALJ, review by the Appeals Council, and judicial review. The provision includes an exhaustion requirement which states, "if you are dissatisfied with our decision in the review process, but do not take the next step within the stated time period,

8

Plaintiff's efforts at reviving any right of review by demanding reconsideration in 1998 on his complaint that his benefits were miscalculated in 1972 is of no avail.

Similarly, even assuming that Plaintiff had a right of review on this issue, his efforts at reviving prior complaints about the $156.40 deduction for medicare premiums from the 1986 time period are also barred. At least as early as 1986, Plaintiff was advised of this deduction and his rights in relation to it. (R. 179), *see also* (R. 74, 177). It appears undisputed that neither Plaintiff nor his payee took any action on either notice. Plaintiff's efforts to revive any right of review he may have had by demanding reconsideration in 1998 are wholly untimely.[8]

Regarding the issues raised for the period 1980 through 1986, any current claims are time-barred or precluded on principles of *res judicata*. On this appeal, Plaintiff urges that the SSA made a duplicate deduction of $3,377.60 for overpayments of benefits made while he was incarcerated in 1980 and 1981. He also complains about any suspension of his benefits based on his incarceration for a period in 1984 and 1985 and his lack of opportunity to seek a waiver. Regarding the overpayment issue arising from his incarceration in 1980 and 1981, it

---

you will lose your right to further administrative review and your right to judicial review, unless you can show us [good cause]." *Id.* at § 404.900(b).

Not all administrative actions are subject to administrative and judicial review. Administrative actions that are "initial determinations" subject to administrative and judicial review are prescribed by the regulations as are those that are not. *See* 20 C.F.R. §§ 404.902 and 404.903.

[8]It is questionable whether Plaintiff even had a right to review. According to the SSA's response in September 1998, absent a request to terminate these Medicare benefits or Plaintiff's payment for the same, the SSA was obligated to pay the premiums. Since neither Plaintiff nor his payee ever responded to the notices, the SSA paid the $156.40 premium. Further, since past due Medicare premiums are not an overpayment, the Act does not permit an appeal. Plaintiff makes no showing to the contrary.

9

appears undisputed that the Appeals Council's decision was affirmed by the United States District Court for the Central District of California in 1987. As the Plaintiff was advised in the letter of September 1998, he had no further right of review on that decision. This advisement followed an earlier letter in December 1987, at which time Plaintiff was similarly advised. (R. 176). Legal *res judicata* bars a subsequent *action* if: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior and present causes of action are the same. *Jang v. United Techs. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000). *Res judicata* bars the filing of claims which were raised or could have been raised in an earlier proceeding. *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). Plaintiff simply had no right to further review of this overpayment decision.

It also appears that Plaintiff sought a waiver of that overpayment as well, without success. *See* (Doc. 176). Since it does not appear that Plaintiff sought further administrative or judicial review on that decision, it was final. "Administrative *res judicata* applies when the agency has made a 'previous determination or decision ... about [a claimant's] rights on the same facts and on the same issue or issues, and [that] previous determination or decision [had] become final by either administrative or judicial action.'" *Luckey v. Astrue*, 2009 WL 1362988, *4 (11th Cir. 2009) (quoting 20 C.F.R. § 404.957(c)(1)); *see also Cash v. Barnhart*, 327 F.3d 1252, 1255 (11th Cir. 2003).

Regarding Plaintiff's claim that the $3,377.60 overpayment was collected twice, I can find no proof of such. In any event, Plaintiff is long past the time permitted for raising the claim. The explanation of what SSA calculated Plaintiff's net benefits to be for the period

from his incarceration in 1981 through his incarceration in 1986 is set forth in a September 1, 1986 letter to Plaintiff's payee. (R.178-79). As there reflected, the SSA did not seek to collect the $3,377.60 pending the court's determination. (R. 179). Upon the district court's affirmance, the SSA advised Plaintiff that it would seek to collect on the overpayment. (R. 177). As explained in the September 1998 letter, this amount was collected between 1988 and 1991. Apart from the fact that there appears no merit to the claim that this overpayment was collected twice, Plaintiff is time-barred from seeking to complain about the matter in 1998. At least since 1986, he was aware of SSA's position and by December 1987, of its intention to collect on the same, which it began doing in 1988. His efforts to revive the claim initiated ten years later simply comes too late.

Plaintiff seeks also to complain that he was not given an opportunity to address the matter of waiver in relation to his incarceration in 1984-1985. It is not at all clear that he was entitled to seek a waiver of overpayment in this manner.[9] In any event, by the notice of September 1, 1986, the SSA indicated that benefits could not be paid for the periods between July 1984 and January 1985 and February 1986 through July 1986 due to his incarceration. (R. 179). It acknowledged his claim that he was participating in a court-approved rehabilitation program during these periods. The notice advised, "When this information is received, a final decision as to whether he is eligible for benefits for these months will be made and you will be notified." *Id.* Plaintiff makes no claim that any helpful information

---

[9] As the notice suggests, a calculation had been made for benefits Plaintiff was entitled to for the period in question. It appears that the calculation withheld payments for when Plaintiff was incarcerated in in 1985 and 1986. (R. 178-80). While Plaintiff might complain about not receiving the benefits, it does not appear an overpayment/waiver issue.

11

was ever submitted and it is unlikely that any could be.[10] In any event, it does not appear that Plaintiff timely challenged the calculations. As set forth above, Plaintiff was subsequently notified in 1987 of the SSAs's intention to seek collection of the overpayment and it began collection in 1988. Plaintiff's effort to revisit these matters by way of a request for reconsideration ten years later is wholly untimely.

Furthermore, the Commissioner is correct that the basis for judicial review of claims arising under Title II of the Act is provided in Sections 205(g) and (h) of the Act:

> (g) Any individual, after any *final decision of the Commissioner of Social Security made after a hearing* to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days of the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. . . . .
>
> (h) The findings and decisions of the Commissioner of Social Security *after a hearing* shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewable by any person, tribunal, or governmental agency *except as herein provided*.

42 U.S.C. § 405(g), (h) (emphasis added). As the Supreme Court has explained, these provisions "[c]learly limit judicial review to . . . a 'final decision of the [Commissioner] made after a hearing.'" *Califano v. Sanders*, 430 U.S. 99, 108 (1977). The term "final decision," however, is not defined in the Act; rather, the meaning of the term has been "left to the [Commissioner] to flesh out by regulations." *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975). Under the regulations, a decision becomes "final" when the plaintiff has exhausted his remedies by completing the four-step administrative review process.

---

[10]*See* (R. 297-301).

12

On my review, Plaintiff has no further rights to hearing or appeal on the issues addressed by the district court in California. On the other issues, such were not properly or timely addressed at the administrative level and the court is without jurisdiction to address them on this appeal.

As for the overpayment/waiver claim arising from Plaintiff's incarceration in 1995, the claim is properly before the court. Because there is no dispute that an overpayment occurred by reason of Plaintiff's incarceration and the Commissioner does not contest that the Plaintiff was without fault in the overpayment, the issue before the court is a narrow one - is the decision of the Appeals Council that recovery of the total overpayment would not defeat the purpose of Title II nor be against equity and good conscience supported by substantial evidence and in conformance with applicable standards?

Under the regulations, the term "defeat the purpose of Title II" is defined to mean, "to deprive a person of income required for ordinary and necessary living expenses. . . ." 20 C.F.R. § 404.508(a). A recovery is "against equity and good conscience" when an individual changed his position for the worse or relinquished a valuable right because of reliance upon notice that a payment would be made of the overpayment itself. 20 C.F.R. § 404.509(a)(1). The individual's financial circumstances are not material to this finding. *Id.* at 404.509(a)(2)(b).

The finding at issue is the Appeals Council's determination that recovery of the 1995 and 1996 overpayments would not be against equity and good conscience because Plaintiff's mother had died and left him with $50,000.00 in stocks and bonds or otherwise defeat the purpose of Title II. Plaintiff does not address the factual underpinnings of the ALJ's finding

13

on these issues, which were based entirely on Plaintiff's testimony. Instead, Plaintiff argues that the Commissioner failed to develop the record because the exact items comprising the overpayment are missing from the record; the Appeals Council's reversal in 2007 of the 2004 decision was vindictive; and the Commissioner exceeded the scope of the remand and violated the doctrine of *res judicat*a.

While the record reflects that the SSA offered several calculations of the overpayment caused by Plaintiff's 1995 incarceration, duplicate payments, and other factors, the final figure for the overpayment and net balance owed is fairly laid out in the notice dated April 7, 1998, which was in the record. (R. 60). Apart from claiming that he was actually owed money, Plaintiff did not challenge the overpayment figures or the balance due before the ALJ. Nor did he complain about a lack of record. Clearly, the Commissioner has a duty to fully and fairly develop the record. However, Plaintiff does not demonstrate that such was not done here or that he was prejudiced in any way.

As I understand his next claim, Plaintiff baldly asserts that the decision by the Appeals Council in 2007 to reverse the decision in 2004 was a vindictive act because Plaintiff had prevailed in his earlier hearing before the ALJ. This argument is wholly unsupported and, upon review, appears utterly without merit. By its decision in January 2004, the Appeals Council granted the Plaintiff's request for review and remanded the case for further consideration of whether the whole of the overpayment should be waived rather than just the net balance still owed as determined by the ALJ in April 2000. In doing so, the prior decision granting waiver was vacated, but as the Plaintiff himself recognized during the hearing on remand, such could have been to his benefit. (R. 327). But for the change in circumstances

14

arising from Plaintiff's inheritance, the findings by the second ALJ in February 2007 indicate that Plaintiff likely would have prevailed as to the entire overpayment sum. The fact of this inheritance was not made known until that hearing. As noted, Plaintiff makes no argument that such change in his circumstances does not justify the conclusions that collection of the overpayment did not defeat the purpose of Title II or that it was against equity and good conscience.[11] The Appeals Council played no role in these findings by the ALJ, and in its December 2007 decision, did nothing more than clarify that the findings were applicable to the whole of the overpayment. I can find no evidence of vindictiveness in the actions taken by the Appeals Council.

Finally, Plaintiff urges summarily that the Commissioner exceeded the scope of the remand and violated principles of *res judicata* in overturning the prior finding of waiver. Neither claim has merit. First, as the Commissioner points out, the waiver decision of the ALJ rendered in April 2004 was vacated by the Appeals Council and a new hearing was ordered. (R. 275-78). This was action taken on Plaintiff's request for review. In the circumstances, principles of *res judicata* are not implicated. As for the scope of the hearing on remand, the ALJ was tasked to decide the whole of the waiver issue. Testimony about Plaintiff's financial circumstances and how he funded his repayments were squarely before the ALJ and the ALJ was not obliged to ignore Plaintiff's testimony about his inheritance. Plaintiff demonstrates no error on this claim.

---

[11]Plaintiff made no claim of detrimental reliance or claim that his financial circumstances had not changed such that he could afford to repay the balance of the overpayment.

In the end, I am obliged to conclude that there is no support for a claim that the collection of this overpayment balance would defeat the purposes of Title II as such is defined by the regulations and Plaintiff has not made a showing of his detrimental reliance. The decision to deny Plaintiff a waiver is appropriately affirmed.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 24th day of September 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record